**NOT FOR PUBLICATION** **CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JP MORGAN CHASE BANK, | : | |
| Appellant, | : | Civil Action No. 05-CV-737 (JLL) |
| v. | : | **OPINION AND ORDER** |
| CYNTHIA TAMIS (a/k/a CYNTHIA GOLDKLANG), PHILIP TAMIS, et al, | : | |
| Appellees. | : | |

**LINARES**, **District Judge**.

This matter comes before the Court on Appellant JP Morgan Chase Bank's (hereinafter "JP Morgan" or "the Bank") appeal from the Order of the Honorable Novalyn L. Winfield of the United States Bankruptcy Court, District of New Jersey, entered December 22, 2004, granting summary judgment in favor of Appellees, Cynthia Tamis and Philip Tamis, and the Order entered December 15, 2004, denying summary judgment to Appellant. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a). The matter is resolved without oral argument.[1] For the reasons stated herein, the Bankruptcy Court's decision granting Appellees'

---

[1] After an examination of all submissions in this case and the record from the Bankruptcy Court proceedings, this Court is exercising its discretion pursuant to Bankruptcy Rule 8012 to forego oral argument.

motion for summary judgment on all counts is affirmed in part and reversed in part.

## BACKGROUND

This appeal arises out of the Chapter 7 bankruptcy proceedings, In re Cynthia Tamis (a/k/a Cynthia Goldklang) & Philip Tamis, and the subsequent adversary proceeding initiated by Appellant seeking to obtain a determination that a debt issued to Appellees' corporation, (personally guaranteed by Appellees) is non-dischargeable.

Philip and Cynthia Tamis (hereinafter "Appellees" or "Debtors") are husband and wife and sole owners and shareholders of Dee Stewart, Incorporated d/b/a Career Blazers (hereinafter "DSI"). DSI was a personnel agency that dealt in temporary employment placements. In 1995 DSI accepted a $50,000 line of credit from JP Morgan. JP Morgan extended an additional $100,000 to DSI in March 2000 and opened a separate line of credit for $250,000 in 2001. When DSI subsequently encountered financial difficulties, JP Morgan approached DSI and offered to consolidate the two lines of credit into one with a fixed interest rate and a specific amortization period to allow the Debtors to continue paying off the debt. To obtain the consolidation, Philip Tamis submitted a personal financial statement to JP Morgan on February 26, 2002 that listed his assets and expected income for the year 2002. On his financial statement, Tamis indicated that he would receive a $400,000 bonus from his employer in 2002 in addition to his regular commission-based salary. After reviewing the entire application, conducting an analysis and projection of DSI's cash-flow and securing personal guarantees on the obligation from the Appellees, JP Morgan combined DSI's debts into one loan in April 2002. DSI ultimately defaulted on its obligations and JP Morgan filed suit in state court to recover on its claim.

On March 24, 2003 JP Morgan obtained judgments against DSI and Philip and Cynthia

Tamis for $314,972.41 in the Superior Court of New Jersey Law Division Bergen County.[2] After JP Morgan attempted to execute on these judgments, DSI filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court, District of New Jersey.[3] The Bankruptcy Court later dismissed the Chapter 11 proceeding and the Debtors filed the instant voluntary Chapter 7 petition on January 23, 2004 for individual bankruptcy in the same court.[4] On April 30, 2004 JP Morgan instituted an adversary proceeding objecting to discharge of its claim and seeking a determination that the $314,972.41 claim owed by Appellees was non-dischargeable under the Bankruptcy Code.[5]

JP Morgan's adversary complaint alleged three separate and exclusive grounds for a determination that their claim was non-dischargeable under the Bankruptcy Code: (1) that the claim falls within 11 U.S.C. § 523(a)(2)(B) since Philip Tamis provided a materially false statement to JP Morgan in his consolidation application (hereinafter "Count One"); (2) that committed fraud or defalcation in violation of their fiduciary duties to DSI under 11 U.S.C. § 523(a)(4) (hereinafter "Count Two") and (3) that the Debtors understated the value of their home and the amount of deferred compensation due to Philip Tamis under 11 U.S.C. § 727(a)(4) during the Chapter 7 proceeding (hereinafter "Count Three").

After the close of discovery in the adversary proceeding, each party filed respective motions for summary judgment pursuant to Bankruptcy Rule 7056. JP Morgan moved for partial

---

[2] Civil Action No. 1-265-03.

[3] Bankruptcy Case No. 03-34413 (NLW).

[4] Bankruptcy Case No. 04-12252 (NLW).

[5] Bankruptcy Case No. 04-1687 (NLW).

summary judgment on Count One. JP Morgan argued that since Philip Tamis admitted to the truth of relevant material facts during his deposition, the issue was appropriate for summary judgment. Mr. and Mrs. Tamis filed a cross-motion for summary judgment on all three counts in JP Morgan's adversary complaint, seeking dismissal of the adversary complaint and a determination by the Bankruptcy Court that the obligation be discharged. After conducting a hearing on the summary judgment motions on December 13, 2004 (hereinafter "the Hearing"), hearing oral argument from the parties, considering the record and arguments raised, Judge Winfield denied Appellant's partial motion for summary judgment and granted Appellees' motion for summary judgment on all three counts, effectively dismissing Appellant's adversary complaint.[6]

Appellant presently sets forth two assertions of error committed by the Bankruptcy Court. First, Appellant contends that the court erred in granting summary judgment to Debtors on Count One of the complaint without allowing the Bank to produce a representative having first-hand knowledge of the Bank's reliance upon the Defendants' falsified financial information. Appellant's second argument asserts that the Bankruptcy Court "erred by granting summary judgment for Defendants on Count Two in light of the existence of evidence of Defendants' breach of a trust relationship with the Bank and other creditors." (JPM Appeal Br., p. 5). Appellant does not appeal the grant of Appellees' summary judgment motion as to Count Three

---

[6]This Court recognizes that in its brief on appeal, Appellant states that "prior to argument, the Bank withdrew its Count Three allegations." (JPM Appeal Br., p. 9). However, it is unclear from the transcript of the Hearing whether the Bank had formally withdrawn Count Three in its entirety, or whether there was only a partial withdrawal. ( Tr., 2-4). Nevertheless, since Appellant only appeals Judge Winfield's determinations with regard to Counts One and Two, this Court limits its review to these portions of Judge Winfield's decision.

of JP Morgan's adversary complaint.

## JURISDICTION

Pursuant to 28 U.S.C. § 158 (a), this district court has "jurisdiction to hear appeals (1) from final judgments, orders and decrees; (2) from interlocutory orders and decrees ... and (3) with leave of court from other interlocutory orders and decrees." Since the Bankruptcy Court's orders regarding the summary judgment motions disposed of all issues raised by the adversary complaint it is thus a "final order" for purposes of § 158(a).[7] See In re Mehta, 262 B.R. 35, 37 (Bankr. D.N.J. 2001).

## STANDARD OF REVIEW

Pursuant to Rule 8013 of the Bankruptcy Rules, this Court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." In bankruptcy cases the district court serves an appellate function. The Court thus reviews findings of fact under a clearly erroneous standard and legal conclusions under a de novo standard. Fed. R .Bankr. P. 8013; In re Sharon Steel Corp., 871 F.2d 1217, 1223 (3d Cir. 1989). A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re Cellnet Data Systems, Inc., 327 F.3d 242, 244 (3d Cir. 2003) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the

---

[7]Although an order granting a summary judgment motion may constitute an un-appealable interlocutory decision, in this case, the summary judgment motion resulted in dismissal of the entire adversary complaint. Thus, it qualifies as a final order of a bankruptcy court and is proper for appeal.

opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. Legal conclusions of the bankruptcy court are subject to de novo review. J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp, 891 F.2d 66, 69 (3d Cir. 1989); Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1981). For determinations that involve mixed questions of law and fact, a district court must apply a mixed standard of review. Mellon Bank, N.A. v. Metro Commc'n, Inc., 945 F.2d 635, 642 (3d Cir. 1981). This Court must accept the Bankruptcy Court's findings of historical or narrative facts unless clearly erroneous, but exercises "plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." Universal Minerals, 669 F.2d at 101-02.

## LEGAL DISCUSSION

**A.      Standard for Summary Judgment**

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001). "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). When considering a motion for summary judgment, all evidence must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party files a properly supported motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. Fed. R. Civ.

P. 56(e); Anderson, 477 U.S. at 256.  "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252.  Furthermore, conclusory statements and arguments do not raise triable issues which preclude summary judgment. Ridgewood Board of Educ. v. N.E., 172 F.3d 238, 252 (3d Cir. 1999).  Instead, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257 (citation omitted).  If the opponent fails to make a sufficient showing regarding an essential element of his or her case upon which he or she will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).

The present task is to determine whether genuine issues of material fact existed, whether Mr. and Mrs. Tamis were entitled to judgment as a matter of law and whether Judge Winfield's grant of summary judgment to Appellees on Counts One and Two was proper.

**B.     Analysis**

The general purpose of the global discharge relief set forth by the Bankruptcy Code is to provide the debtor with a fresh start. In re Renshaw, 222 F.3d 82, 86 (2d Cir. 2000) (citing Williams v. U.S. Fidelity & Guar. Co., 236 U.S. 549, 554-55 (1915)). However, discharge is not available to every debtor on every claim and the Bankruptcy Code provides statutory exceptions to discharge in varying circumstances involving debtor misfeasance. See 11 U.S.C. § 523. Courts typically construe the statutory exceptions to discharge in bankruptcy "narrowly against the creditor and in favor of the debtor." In re Pelkowski, 990 F.2d 737, 744 (3d Cir. 1993) (citing In re Decker, 595 F.2d 185, 187 (3d Cir. 1979)).

### 1.     Grant of Summary Judgment as to § 523(a)(2)(B) Claim

JP Morgan moved the Bankruptcy Court for a grant of summary judgment on Count One of its complaint. Count One alleged that the Debtors' obligations to JP Morgan are non-dischargeable under 11 U.S.C. § 523(a)(2). Although the language of the complaint gives no clear indication which subsection of § 523(a)(2) JP Morgan relies upon, at oral argument, JP Morgan represented that Count One was a claim under § 523(a)(2)(B). (Hr'g Tr., p. 3). Section § 523(a)(2)(B) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt - -
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by - -
>
> (B) use of a statement in writing - -
>
> (i)     that is materially false;
> (ii)    respecting the debtor's or an insider's financial condition;
> (iii)   on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv)    that the debtor caused to be made or published with intent to deceive . . .

11 U.S.C. § 523(a)(2)(B). To successfully raise an objection to discharge, a creditor must prove by a preponderance of the evidence that it is entitled to the exception from discharge. In re Cohn, 54 F.3d 1108, 1114 (3d Cir. 1995) (citing Grogan v. Garner, 498 U.S. 279, 287-88 (1991)). Thus, pursuant to § 523(a)(2)(B), JP Morgan must prove that the Debtors used a statement in writing: (1) that is materially false; (2) respecting their financial condition; (3) upon which JP Morgan reasonably relied; and (4) with the intent to deceive JP Morgan.

JP Morgan alleges that the contents of the Debtors' written loan application, submitted in

conjunction with the Debtors' application for a consolidation, included materially false statements respecting the Debtors' financial condition that the Bank reasonably relied upon and that were made with the intent to deceive. (Adv. Compl., ¶¶ 33-38). The alleged false statements related to Debtors' misrepresentation of DSI's corporate status as a franchise and Philip Tamis's misrepresentation regarding the amount of income he expected to receive in 2002. (Adv. Compl., ¶¶ 34, 37). To demonstrate material falsity, JP Morgan alleges that the Debtors knew that Philip Tamis's representation that he would receive a $400,000 bonus in 2002 was false. JP Morgan further alleges that "the Bank relied on this materially false statement in writing regarding the Debtors' financial condition and as a result, extended credit. The statutory elements are satisfied and undisputable, and accordingly thes [sic] Court must grant the Bank's motion for Summary Judgment declaring that the Bank's claim is non-dischargeable." (JPM Summ. J. Br., p. 5). However, JP Morgan does not provide much support for this assertion. Rather, JP Morgan merely concludes that "the undisputed facts satisfy all of the statutory criteria of 11 U.S.C.A. § 523 (a)(2)[B]" and "the material facts here are not in dispute and, as a matter of law, the Bank is entitled to the relief requested in this motion." (JPM Summ. J. Br., p. 5, 6).

   The Debtors, on the other hand, moved for summary judgment on Count One of the adversary complaint, alleging that as a matter of law, JP Morgan could not meet its burden of proof on the § 523(a)(2)(B) objection to discharge. To bolster its assertion, Debtors argue that JP Morgan did not provide specific evidence that Philip Tamis had supplied materially false information nor specific evidence that JP Morgan had relied on this information.

   The Honorable Novalyn L. Winfield conducted the Hearing on the summary judgment motions December 13, 2004. Discovery in the adversary proceeding had ended two months

earlier, in October 2004. Although oral argument was heard by the Court, no witnesses were called. At the close of oral argument, the Honorable Novalyn L. Winfield granted summary judgment on Count One in favor of the Debtors, finding that JP Morgan failed to prove two statutory elements of § 523(a)(2)(B). Judge Winfield determined that JP Morgan did not carry its burden of proof with respect to the statute's elements of reliance and intent. (Hr'g Tr., p. 35). Judge Winfield further found that JP Morgan's failure to prove two required elements of the statutory exception to discharge was "insufficient to grant summary judgment in favor of the bank ... [however] the failure is likewise a sufficient basis to grant summary judgment in favor of the Tamises." (Hr'g Tr., p. 35). JP Morgan appeals from Judge Winfield's decision and asks this Court to reverse or remand the determinations of the Bankruptcy Court.

Section 523(a)(2)(B)(iii) requires a creditor to prove by a preponderance of the evidence that the creditor "reasonably relied" on a false statement. This component is two-fold: a creditor must first show actual reliance and second, the creditor must show that the reliance was reasonable. See In re Cohn, 54 F.3d at 1108. To prove that JP Morgan actually relied on the false statements of the Debtors, the Bank offered the deposition of Peter H. Yagaloff (hereinafter "Yagaloff"), a recovery manager in the special loans department at JP Morgan.  (Yagaloff Dep., p. 7). Significantly, Yagaloff was not the loan officer who personally dealt with the application in question. However, in its summary judgment brief and during the Hearing, JP Morgan offered specific testimony given by Yagaloff at the end of his deposition as its sole evidence to demonstrate JP Morgan's reliance on Debtors' statements. A relevant excerpt from the deposition follows:

> JP MORGAN COUNSEL:    Would reliance have been made upon this

|  |  |
|---|---|
|  | document [the application] in creating a business plan for the applicants or for the debtors? |
| YAGALOFF: | Yes. This piece *would* certainly be a segment of that. (emphasis added) |
| JP MORGAN COUNSEL: | And in creating a business plan and based upon expectation for what the applicants can pay, what weight is this type of information, this financial disclosure? |
| YAGALOFF: | Considerable. |

(Yagaloff Dep., p. 54).

Upon <u>de novo</u> review of Judge Winfield's decision, this Court finds that it was properly based upon the applicable law and the entire record. During the Hearing, Judge Winfield expressed concern regarding Yagaloff's ability to prove reliance due to his lack of personal knowledge regarding the transaction. A relevant excerpt from the Hearing follows:

|  |  |
|---|---|
| JUDGE WINFIELD: | Let me ask you one question, that caused me some concern as I was reading the depositions and the papers, it's a fair statement I think that Mr. Yagalov [Yagaloff] . . . had no personal knowledge about this transaction. |
| JP MORGAN COUNSEL: | He was not the original loan officer, the deposition notice I think said bank representative with relevant knowledge, well he's the loan manager who handles and he explains it all in the beginning, it's in his account. So he understands the documents, he understands what the bank will ordinarily do with those documents, he's familiar enough with these sort of scenarios, that he can say in similar situations, this is the |

11

|  |  |
|---|---|
|  | bank's procedures, this is what the bank will actually do. But often times, his answer was, yes to my recollection or to my personal knowledge I don't know. |
| JUDGE WINFIELD: | But isn't that a problem for purposes of proving reasonable reliance? I mean I don't know whether anybody relied on this, do I? |
| * * * |  |
| JUDGE WINFIELD: | But I - - the - - whoever the loan officer or the person responsible for this particular transaction for this particular transaction, I don't have testimony from a person, or a group of persons that specifically dealt with this transaction. Do I? |
| JP MORGAN COUNSEL: | Not at the original time . . . |

(Hr'g Tr., p. 16-18).

Section 523(a)(2)(B) requires a creditor to prove four specific elements to achieve a determination of non-dischargeability. Applying a <u>de novo</u> standard of review to Judge Winfield's determinations, this Court concludes that her determination that JP Morgan failed to prove actual reliance was grounded in the applicable law and based on the record before her. Discovery had closed prior to the Hearing. The only evidence relied upon by JP Morgan were the depositions of Mr. Tamis, Yagaloff and documentary evidence. This Court agrees with the Bankruptcy Court that as a matter of law, this evidence, whether examined separately or together, was insufficient for JP Morgan to succeed on its motion for summary judgment and similarly, it was thus appropriate for Judge Winfield to grant the Debtors' motion for summary judgment. None of the evidence in the record supports a finding of actual reliance. Indeed, even during Judge Winfield's questioning of JP Morgan's counsel during oral argument, it is clear that

counsel was unable to state that Mr. Yagaloff had any personal knowledge of the transaction at hand or of the Bank's reliance on such information. At best, Mr. Yagaloff could testify to his knowledge regarding the *type* of information that the Bank typically relies on, but could not offer proof of actual reliance. Inasmuch as Mr. Yagaloff had no personal knowledge regarding JP Morgan's consideration of the different pieces of information provided in the debtor's application for consolidation, it does not appear possible to this Court that JP Morgan could prove by a preponderance of the evidence that the Bank had actually relied on the statements. The fact that Mr. Yagaloff was a recovery manager and had general knowledge of JP Morgan's loan practices is insufficient to prove actual reliance. Without proof of actual reliance, there is no need to consider whether the reliance was reasonable. Absent proof of reliance, a claim for non-dischargeability under § 523(a)(2)(B) necessarily fails. After conducting de novo review of Judge Winfield's decision, this Court agrees that JP Morgan's § 523(a)(2)(B) claim fails as a matter of law. Accordingly, the order of the Honorable Novalyn L. Winfield granting summary judgment to Debtors and denying partial summary judgment to JP Morgan on Count One is affirmed.

      a.      **Appellant's Rule 56(e) & (f) Arguments**

This Court also finds it necessary to address the portion of Appellant's appeal brief which alleges that Judge Winfield erred by granting Debtors' motion for summary judgment on Count One "without allowing the Bank to produce a representative having first-hand knowledge of the Bank's reliance upon the Defendants' falsified financial information in making and guaranteeing a loan to Defendants' corporation." (JPM Appeal Br., p. 5). JP Morgan finds fault with the fact that Judge Winfield reached her conclusion "without providing the Bank any opportunity to produce such a witness prior to the imposition of summary judgment." (JPM Appeal Br., p. 10).

13

Since decisions relating to discovery are procedural in nature, this Court will review Appellant's allegations under an abuse of discovery standard. In re Kiwi Intern. Air Lines, Inc., 344 F.3d 311, 323 (3d Cir. 2003). Upon review, an abuse of discretion will be found if the bankruptcy judge acted in an irrational, arbitrary or capricious manner "clearly contrary to reason and not justified by the evidence." Vizzini v. Ford Motor Co., 569 F.2d 754, 760 (3d Cir. 1977). Appellant cites to Federal Rule of Civil Procedure 56(e) & (f) to support its proposition that Judge Winfield erred by not allowing JP Morgan an opportunity to introduce a witness with personal knowledge of the transaction. However, Rules 56(e) & (f) concern situations where a party *requests* leave to supplement discovery. Here, JP Morgan never submitted a request to the Court to allow new testimony until the day of the Hearing, so its reliance on Rules 56(e) & (f) is misplaced. (Hr'g Tr., p. 40-43). JP Morgan made no attempt to comply with Rule 56(f) nor to request a continuance of the summary judgment proceedings until further discovery was completed. See In re Cress, 106 B.R. 246 (Bankr. D.Kan. 1989) (holding that if a party submits an affidavit supporting their Rule 56(f) request, the Bankruptcy Court will have discretion to grant a continuance). There is no evidence that Judge Winfield acted in an irrational manner by making a contemporaneous decision the day of the summary judgment hearing. Rather, her decision appears to be based on the surrounding circumstances and justified by the evidence. This Court therefore concludes that the Bankruptcy Court did not abuse its discretion by reaching a decision the day of the Hearing without testimony from any other JP Morgan representatives.

2.   **Grant of Summary Judgment as to § 523(a)(4) Claim**

In its cross-motion for summary judgment filed in the adversary proceeding, the Debtors moved before the Bankruptcy Court to grant summary judgment in their favor on all counts of JP

Morgan's adversary complaint. Count Two of JP Morgan's complaint alleges that the Debtors obligations to JP Morgan are non-dischargeable under 11 U.S.C. § 523(a)(4). Section § 523(a)(4) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt - -
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . . 11 U.S.C. § 523(a)(4).

JP Morgan alleges that its claim is non-dischargeable under § 523(a)(4) as a result of Debtors' (1) failure to exercise the degree of diligence, care and skill which an ordinarily prudent person would exercise under similar circumstances; (2) conduct of corporate affairs in a fraudulent and/or unconscionable manner; (3) waste of corporate assets and (4) breach of fiduciary responsibility by failing to preserve the assets of DSI once DSI became insolvent. (Adv. Compl. ¶¶ 41-47). The Debtors were the only party to move for summary judgment on Count Two. In their summary judgment brief, Debtors argue that Count Two should be dismissed because JP Morgan presents no facts to support its allegations of fraud or defalcation. In its opposition to Debtors' motion, JP Morgan alleges that Count Two is inappropriate for summary judgment since, as the nonmoving party, the Bank is entitled to all reasonable inferences from facts alleged by Debtors and that there are material facts in dispute.

As previously noted, a Hearing was held on the summary judgment motions December 13, 2004 before Judge Winfield. Discovery in the adversary proceeding ended in October. At the close of oral argument, Judge Winfield granted summary judgment on Count Two in favor of the Debtors and ordered Count Two dismissed. In reaching her decision, Judge Winfield cited to the

15

absence of facts demonstrating a fiduciary relationship between the Debtors, as officers of DSI, and JP Morgan, as a creditor of DSI, as well as to the lack of evidence demonstrating any misappropriation of DSI's funds. (Hr'g Tr., p. 37).

In concluding that Debtors were entitled to summary judgment on Count Two, the Bankruptcy Court relied on the factors considered for § 523(a)(4) determinations on non-dischargeability as discussed in In re Caretta, 219 B.R. 66 (Bankr. D.N.J 1998). To make a successful objection to discharge under § 523(a)(4) on the grounds of fraud or defalcation, a creditor must prove, by a preponderance of the evidence, that the debtor committed fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4). In New Jersey, a fiduciary relationship between a corporation (and its officers) and its creditors arises once the corporation becomes insolvent. In re Caretta, 219 B.R. at 74. To sustain an objection to discharge under § 523(a)(4), the fiduciary relationship must exist prior to the alleged breach of fiduciary duty. Id. at 73-74. The Bankruptcy Code does not define the term "defalcation," but courts have construed it broadly, holding that a failure of a trustee to account for funds under his control meets the § 523(a)(4) standard for non-dischargeability. See In re Duttenhofer, 12 B.R. 926 (Bankr. C.D. Cal. 1981); In re Beach, 13 B.R. 759 (Bankr. M.D. Ala. 1981).

In re Caretta remains the leading authority in this jurisdiction for cases involving creditors' objections to discharge brought under § 523(a)(4). In that case, a judgment creditor instituted an adversary proceeding against the principal of a debtor corporation seeking to have a debt declared non-dischargeable for the principal's misappropriation of assets while acting in a fiduciary capacity. 219 B.R. at 67, 69. The principal sought to have the complaint dismissed for failure to state a claim based on the absence of a fiduciary relationship between the debtor and

16

the creditor. Id. at 69. The Honorable Rosemary Gambardella of the United States Bankruptcy Court, District of New Jersey, acknowledged that although the concept of fiduciary relationships in bankruptcy cases is traditionally narrowly construed, in the case of a close corporation, a fiduciary duty to creditors arises once the corporation becomes insolvent. Id. at 74. In order to avoid the designation of a constructive trust, which falls outside the scope of § 523(a)(4), the "fiduciary duty [must exist] prior to the alleged wrong that was committed." Id.

In their summary judgment brief, Debtors cite to the record to demonstrate that JP Morgan has not presented any evidence of fraud or defalcation that leaves a disputed genuine issue of material fact. In opposition, JP Morgan alleges that a trust existed between the Debtors and JP Morgan when DSI became insolvent in December, 2002. JP Morgan also alleges that the Debtors' failure to account for $30,000 in accounts receivable of the corporation during the Chapter 11 bankruptcy proceedings constituted a breach of their fiduciary duties and makes the underlying debt owed to the Bank non-dischargeable. JP Morgan alleges that "there was never an accounting of these accounts receivables, and it is presumed they were squandered." (JPM Opp'n Br., p. 8).

Since discovery closed prior to the parties filing their motions for summary judgment, Judge Winfield possessed a complete record before her upon which to draw conclusions. During the Hearing, Judge Winfield determined that the facts of In re Caretta and this case were so distinguishable as to find no fiduciary relationship between the Debtors and JP Morgan. (Hr'g Tr., p. 38). As a result, Judge Winfield did not find that § 523(a)(4) applied and granted summary judgment in favor of the Debtors on Count Two. (Hr'g Tr., p. 38). Since a decision regarding a summary judgment motion is a legal conclusion, this Court will conduct a de novo review of

Judge Winfield's decision on Count Two. Fed. R. Bankr. P. 8013. Additionally, this Court notes that it is bound to review all evidence and inferences therefrom in the light most favorable to JP Morgan, the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In his deposition, Philip Tamis represented that DSI became insolvent in December, 2002 when the corporation was unable to meet its payroll expenses. (Tamis Depo., p. 99-101). From the inception of insolvency through the completion of the consolidation in April, 2002 and until entry of the state court judgment, Philip Tamis was a 51% shareholder and officer of DSI and his wife Cynthia held the remaining shares and officer positions (Tamis Depo., p. 101). After filing for Chapter 11 bankruptcy, the record reflects that Cynthia Tamis failed to disclose $30,000 in accounts receivable due to DSI on the schedules submitted in conjunction with the 2003 petition for Chapter 11. During the Hearing, however, Debtors argued that this failure to disclose was inadvertent and that in any event, those funds were due to Career Blazers as DSI's franchiser, which left JP Morgan with no rights to the funds. (Hr'g Tr., p. 25).

In reaching her decision that § 523(a)(4) does not apply, Judge Winfield relied upon the absence of an express trust relationship between Debtors and JP Morgan to support her determination that § 523(a)(4) did not apply. (Hr'g Tr., p. 38). She also found few factual similarities between the facts in In re Caretta and the relationship between the Debtors, DSI and JP Morgan. (Hr'g Tr., p. 22). Judge Winfield emphasized the absence of any indication by JP Morgan that the Debtors misappropriated any funds and the fact that any allegations of waste by the Debtors did not worsen DSI's financial situation beyond repair. (Hr'g Tr., p. 37-38). The Judge also stated that "the notion of what constitutes a fiduciary relationship will be construed

18

somewhat narrowly . . . as requiring almost an express trust relationship or something very similar to that." (Hr'g Tr., p. 38).

Upon de novo review of the record and Judge Winfield's determinations, this Court determines that genuine issues as to material facts existed and Debtors were not entitled to a grant of summary judgment on Count Two. As stated previously, once the moving party demonstrates that there is no genuine issue of material fact remaining for trial, the non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56 (c). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A claim for non-dischargeability due to fraud or defalcation under § 523(a)(4) requires JP Morgan to prove by a preponderance of the evidence that a fiduciary relationship existed between themselves and the Debtors and that the Debtors committed fraud or defalcation in breach of their fiduciary duties.

JP Morgan alleges that a trust existed between the Debtors and JP Morgan as a result of DSI's December 2002 insolvency. The Debtors deny the existence of a trust or fiduciary relationship. In In re Caretta, the Bankruptcy Court determined that a fiduciary relationship existed between a judgment creditor and debtor where the debtor was the sole shareholder and officer of a close corporation that became insolvent *prior to* the alleged wrongdoing. Here, this Court determines that JP Morgan met its burden as the nonmoving party by alleging that a close corporation (DSI) became insolvent as of December 2002, having only two shareholders and officers (the Debtors) and by alleging that Debtors concealed $30,000 due to DSI in accounts receivable after DSI became insolvent. If true, these allegations would constitute a prima facie

19

case for a determination of non-dischargeability under § 523(a)(4). Even if false, this Court nevertheless determines that the allegations raise genuine issues as to material facts relating to JP Morgan's § 523(a)(4) claim for non-dischargeability. Accordingly, the Order of the Honorable Novalyn L. Winfield granting Appellees' motion for summary judgment on Count Two is reversed and remanded for further proceedings on this issue.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision granting Appellees' motion for summary judgment is reversed and remanded in part and affirmed in part.

## ORDER

For the foregoing reasons, it is this 31st day of October, 2005,

**ORDERED** that the Bankruptcy Court's decision granting the Appellees' motion for summary judgment as to Count One and denying it as to Appellant is AFFIRMED and it is further;

**ORDERED** that the Bankruptcy Court's decision granting Appellee's motion for summary judgment as to Count Two is hereby REVERSED and these issues are REMANDED to the Bankruptcy Court for further proceedings.

This case is **CLOSED**.

DATE: November 16, 2005              /s/ Jose L. Linares
                                     United States District Judge